Folger v. Heidel.

————o————

ALICE FOLGER, Respondent, *vs.* CHARLES HEIDEL, Appellant.

1. *Evidence—Verbal directions of Probate Judge.*—The verbal directions of a judge of Probate will not protect a guardian and are not receivable in evidence in defense of his action.

2. *Ward, gratuitous maintenance of—Subsequent claim for—Payment of by guardian—Estate not liable, when.*—The question whether an allowance out of his estate shall be granted for the support of a ward, depends very much on the facts of the particular case. It may, in some instances, be granted for past maintenance; but never, where one has taken and brought up an infant as a member of his family, without any apparent claim or expectation, until afterward, of an allowance from the estate for such support. And a guardian paying such charge cannot hold the estate therefor.

2. *Administrator—Annual settlement of not conclusive.*—An annual settlement is not conclusive, nor has it the force of a judgment.

*Appeal from Carroll Circuit Court.*

*Hale & Eads,* for Appellant, cited, in argument, Brent by Guardian vs. Grace, Adm'r, 30 Mo., 253; Mitchell vs. Williams, 27 Mo., 399; Wagn. Stat., 1872, § 28, Ch., 66; Strouse vs. Drennan, 41 Mo., 289.

*L. H. Waters, with J. H. Wright,* for Respondent.

I. While a guardian may make expenditures for the support and maintenance of his ward, without applying in the first instance to the Probate Court for an order and appropriation, he must show that the expenditure was subsequently sanctioned by the court and allowed him in his settlement. (Brent by Guardian vs. Grace, Adm'r, 30 Mo., 253.) And there must be some record showing that the payment was made under such order or sanction. (Dillon's, Adm'r vs. Bates, etc., 39 Mo., 302.)

II. The payment if made at all by the appellant was for *past maintenance,* covering a period commencing fourteen years before the pretended payment was made, and made to parties who stood *in loco parentis* towards respondent, and nothing short of an express order to pay the same, made by a court of competent jurisdiction, should be accepted as a justification of the expenditure. (Otte *et ux.* v. Becton, 55 Mo., 99; 2 Sto. Eq., § 1354 *a.,* 10 Ed. and note.)

WAGNER, Judge, delivered the opinion of the court.

The first and main exception in this cause relates to the action of the court in rejecting the claim of the defendant for six hundred dollars, which he alleged that he paid for the clothing, support, education and medical attention of plaintiff, who was his ward.

It seems that plaintiff was left an orphan when she was a small infant and the defendant was her testamentary guardian and curator. She always resided with her grandfather and grandmother who treated her as one of the family.

Defendant filed with his settlement, in 1872, a receipt purporting to be signed by the grand parents, G. W. and Nancy

Folger which states that the money was for the clothing, support, education and medical attention of Alice, the plaintiff, at the rate of fifty dollars a year; and defendant, in his testimony says that it was for the first twelve years of her life; that Mrs. Folger, who appears to have transacted all the business, caused the receipt to be signed in his presence and ordered him to pay the money to C. W. Heidel; that he did so and took a note payable to the Folgers for the amount.

On the other hand, the execution of the receipt was pointedly denied. Mrs. Shirley, who it was alleged signed the receipt for and at the request of Mrs. Folger, positively denies that she signed the paper produced, and C. W. Heidel, who got the money, says that he went to the defendant to borrow the money, and he told him that he could let him have six hundred dollars of plaintiff's money, and that when he received it defendant told him to draw up a note, payable to Mrs. Folger, and that he drew up the same and gave it to defendant; that he never had any arrangements with Mrs. Folger in regard to borrowing the money; that he borrowed it of the defendant and not of Mrs. Folger.

There was some testimony to show that Mrs. Folger, on one occasion, asked defendant if she could not get something for keeping Alice, and defendant offered to show that he had asked the judge of the Probate Court for an order in relation to the payment of the $600, and asked him if he should pay it, and, if so, whether he would be allowed for it in his settlements. This evidence was objected to, because, 1st. it did not purport to be a claim for necessaries; 2nd, the Probate Court was a court of record, and could only speak by the record, and, 3rd, the oral directions of the judge were not evidence for any purpose. The objections were sustained and the testimony excluded.

Defendant then offered to prove by the probate judge, that he, the judge, told defendant to pay the claim and take the receipt for it, and this evidence was ruled out.

It is not pretended that any of these conversations or directions took place in term time. Whatever is done by a court

of record, must appear by the record, and the mere verbal directions or declarations of a judge are not receivable in evidence.

We will not attempt here to analyze the evidence in regard to the receipt. It was directly conflicting—wholly irreconcilable, and the court below, who heard the witnesses, was much more competent to judge of their credibility than we possibly could be. But it seems that the judgment of the court was not founded so much upon the weight of evidence, as upon the conclusion of law that defendant's claim could not be allowed.

It is evident that the receipt was wrongly dated; that fact is now admitted. It bears date in 1868, and if it was given at all, it was executed in 1870. It was intended to cover the period up to 1868, and that would include the first twelve years of plaintiff's existence. It will thus be perceived, that it was for maintenance and support for a time that was entirely past. Now it is very clear that the grandparents never intended to charge the plaintiff anything for living with them She was treated and regarded as one of the family. Upon this point the evidence is conclusive. If after she had lived with them as one of the family, without any intention of charging her for the same, they had changed their minds, it would make no difference; for the principle is a familiar one, that what was originally intended as a gratuity, cannot subsequently be turned into a charge. (Allen vs. Richmond College, 41 Mo., 309.)

In the case of Whipple vs. Dow *et ux.* (2 Mass., 418), it was said: "If a mother support her child gratuitously, without any intention, at the time, of demanding a recompense, nothing is more clear than that she could not, upon a change of inclination, afterwards have an action therefor."

When and under what circumstances an allowance will be made for the support or maintenance of the ward depends very much on the facts of each particular case, and it is not denied that in certain cases it may be made as well for past as future maintenance. (Guion vs. Guion, 16 Mo., 48; Gil-

lete vs. Camp, 27 Mo., 541; Otte vs. Becton, 55 Mo., 99.) But it is not believed that a case can be found where a parent or any one standing *in loco parentis* has been allowed to charge an infant when he took it and raised it as a member of his family, without any intention or design of charging for its support.

The case of Brent vs. Grace's Adm'r (30 Mo., 253), is cited to show that the defendant is entitled to the allowance, though no previous authority was obtained by him from the court for its payment. That case decides that if the guardian makes expenditures for the maintenance and education of his ward, without first procuring an appropriation from the Probate Court, the allowance of an account for such expenditures already made satisfies the statute; but that case is widely different from this and clearly distinguishable from it. There the guardian paid the expenditures as they occurred, for which there was an undoubted liability; here he attempts to go back and pay for past maintenance, for which there was no legal liability, and on which no recovery could have been had in an action at law.

But it is contended, that the claim was allowed in his settlement, in 1872, and that that is conclusive and decisive in his favor. The settlement made in 1872, was an annual settlement, and the record does not show that it was ever acted upon or approved. But waiving this last defect or omission in the record, it is the settled law in this State, that an annual settlement is not conclusive, nor has it the force of a judgment. This question was very thoroughly discussed in the case of Picot vs. O'Fallon (35 Mo., 29), and that case has been followed and approved in all our subsequent decisions.

Under the statute (Wagn. Stat., 681, § 48), the guardian is required to give notice when he makes his final settlement, but no such notice, nor any notice whatever, is required in reference to annual settlements, and such settlements are therefore *ex parte*, and are rarely, if ever, made in the presence of the parties interested in the estate. They are in no manner in the nature of judgments, for no appeal can be taken from

them. On a final settlement, all the parties in interest are brought in to protect their rights, and being in on notice, they are effectually concluded by the settlement made. They are then at liberty to examine into the whole matter of the guardianship, and show that errors and mistakes have been committed; that the guardian has received credits which he was not entitled to, and that he has neglected to charge himself with effects which have come into his hands. And, as the proceeding is final, an appeal lies from the judgment.

It is a question of great doubt, in this case, whether the defendant really parted with the money for the purpose of paying the supposed claim of Mr. & Mrs. Folger, or whether he loaned it to C. W. Heidel and took the note in order to make himself secure. At all events, his ward was not liable for the claim; and as he took no precautions to protect her rights and his acts were acts purely voluntary, he must be regarded as having paid it in his own wrong.

The further point is urged, here, that the court had no right at the time to require the guardian to make a final settlement and pay the money in his hands to the plaintiff. By the provisions of the will under which the defendant qualified and acted as guardian and curator, the estate of the testator was not to be paid over to the plaintiff till she arrived at the age of twenty-one years. At the time the court compelled him to make his final settlement in this case she was in her nineteenth year. But the estate in controversy did not descend to the plaintiff under the provisions of the will, and was never the property of the testator. She inherited it from an entirely different source, and the guardian did not receive it under the will. By our statute, women are now of age at eighteen years (Wagn. Stat., 672, § 1), and as plaintiff had arrived at that age, she was entitled to her estate, which was not derived from the will.

The judgment, in my opinion, should be affirmed; all the judges concurring.